UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARY L. PAYTON,

                          Plaintiff,

v.                                                        6:15-CV-0318
                                                              (GTS)

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                          Defendant.
_____

APPEARANCES:                                                   OF COUNSEL:

OFFICE OF STEVEN R. DOLSON                  STEVEN R. DOLSON, ESQ.
 Counsel for Plaintiff
126 N. Salina St., Suite 3B
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.                     DAVID L. BROWN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II   Special Assistant U.S. Attorney
 Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

      Currently before the Court, in this Social Security action filed by Mary L. Payton ("Plaintiff") against the Acting Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 16, 22.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

I.   **RELEVANT BACKGROUND**

   A.   **Factual Background**

Plaintiff was born on March 10, 1961. The highest level of education that she achieved was completing the tenth grade in high school. Plaintiff's employment history consists of working in daycare, customer service, and housekeeping, and as a deli clerk and home attendant. Generally, Plaintiff's alleged disability consists of asthma, emphysema, degenerative joint disease of the bilateral hips, degenerative disc disease at L3-4 with retrolisthesis, and disc bulges at L3-4, L4-5, and L5-S1. Plaintiff's alleged disability onset date was originally March 1, 2012, but was later amended to September 21, 2012.

   B.   **Procedural History**

On June 22, 2012, Plaintiff applied for Social Security Disability Insurance and Supplemental Security Income. (Tr. 147-157.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On August 28, 2013, Plaintiff appeared before the ALJ, John P. Ramos. (Tr. 25-52.) On October 10, 2013, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (Tr. 9-23.) On February 25, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

   C.   **The ALJ's Decision**

Generally, in his decision, the ALJ made the following four findings of fact and conclusions of law. (Tr. 14-18.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 21, 2012 (her amended onset date). (Tr. 14.)

Second, the ALJ found that Plaintiff had the following nine medically determinable impairments: (1) diabetes mellitus, (2) chronic obstructive pulmonary disease ("COPD"), (3) sleep apnea, (4) hypertension, (5) asthma, (6) emphysema, (7) obesity, (8) degenerative joint disease of the bilateral hips, and (9) degenerative disc disease with mild retrolisthesis and mild disc bulges at L3-L4, L4-L5, and L5-S1. (Tr. 14-15.) Third, the ALJ determined that Plaintiff's impairments, considered singly or in combination, are not expected to limit Plaintiff's ability to perform basic work-related activities for twelve consecutive months. (Tr. 15-18.) Therefore, the ALJ determined that Plaintiff did not have a severe impairment or combination of impairments within the meaning of the Regulations and ended his analysis at step two of the sequential evaluation. (Tr. 15.) Fourth, and finally, the ALJ found that Plaintiff had not been under a disability from September 21, 2012, through the date of his decision, i.e., October 10, 2013. (Tr. 18.)

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Generally, Plaintiff makes the following three arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ's failure to classify her asthma and emphysema as severe impairments was reversible error because (a) these impairments significantly limit her ability to do basic work activities, (b) the ALJ erred in assigning "some weight" to the opinion of consultative examiner, Dr. Pamela Tabb, and failed to adequately explain his reasons for doing so, and (c) the fact that medication provides Plaintiff some relief does not mean her conditions are less than severe. (Dkt. No. 16, at 3-5 [Pl.'s Mem. of Law].)

Second, Plaintiff argues that the ALJ's failure to classify her degenerative joint disease of the bilateral hips as a severe impairment was reversible error because (a) she has consistently

been treated and prescribed medication for the condition, (b) imaging studies reveal that her hips show "early degenerative changes," (c) Dr. Tabb determined that her hip flexion is limited bilaterally due to pain in her hip, (d) the ALJ disregarded this evidence without explanation, and (e) the ALJ improperly raised the step two standard by opining that Plaintiff did not seek enough treatment for her hip impairment and did not seek treatment at the right time. (*Id.* at 5-6.) Furthermore, Plaintiff argues that this impairment is more than a slight abnormality because it has more than a minimal impact on her ability to work and significantly limits her ability to do basic work activities. (*Id.* at 6.)

Third, and finally, Plaintiff argues that the ALJ's failure to classify her degenerative disc disease at L3-4 with retrolisthesis and her disc bulges at L3-4, L4-5, and L5-S1 as severe impairments was reversible error for the following reasons: (a) the ALJ erroneously noted that the medical records contain gaps with regard to Plaintiff's back pain and associated treatment from November 2012 and onward; (b) although Plaintiff did not complain of experiencing as much back pain during a March 2013 examination, the ALJ failed to consider subsequent examinations where Plaintiff sought treatment for severe back pain and numbness in her left toes; (c) the ALJ found that Plaintiff had been prescribed only conservative medication such as ibuprofen and Flexeril for her back pain but failed to consider that she had been prescribed Lortab as well; and (d) the ALJ erred by finding that Plaintiff's back impairment is not severe because, although the medical records did not establish that she sought treatment for twelve consecutive months, all the law requires is that the impairment "can be expected to last for a continuous period of not less than 12 consecutive months." (*Id.* at 7-8.)

### B. Defendant's Arguments

Generally, Defendant makes the following three arguments in opposition to Plaintiff's motion for judgment on the pleadings and in support of Defendant's own such motion. First, Defendant argues that the ALJ did not commit reversible error in finding that Plaintiff's asthma and emphysema were not severe impairments because (a) Dr. Tabb's pulmonary findings were not consistent with the remainder of the record and the ALJ appropriately repudiated her findings, (b) in any event, Dr. Tabb did not find that Plaintiff's pulmonary limitations significantly limited her ability to perform basic work activities, (c) the fact that medication alleviates Plaintiff's lung conditions provides substantial evidence that these impairments are not severe under step two, and (d) it was proper for the ALJ to not fully credit Plaintiff's testimony that she has shortness of breath upon walking one-and-a-half blocks or up six steps in light of the record medical evidence. (Dkt. No. 22, at 4-8 [Def.'s Mem. of Law].)

Second, Defendant argues that the ALJ did not err in finding that Plaintiff's degenerative joint disease of the bilateral hips was not severe because (a) imaging studies of Plaintiff's hips showed only early degenerative changes with no fracture dislocation or bony destruction, (b) although Dr. Tabb found Plaintiff to have reduced hip flexion due to pain, all of Plaintiff's other hip ranges of motion were normal, (c) Dr. Tabb did not identify any functional limitations, such as sitting, walking, or standing caused by Plaintiff's hip problems, and (d) it was proper for the ALJ to not fully credit Plaintiff's testimony in light of the contrary objective medical evidence, her irregular reports of hip pain, and her sporadic and conservative medication and treatment regimen. (*Id.* at 8-9.)

Third, Defendant argues that the ALJ did not err in finding that Plaintiff's degenerative disc disease at L3-4 with retrolisthesis and her disc bulges at L3-4, L4-5, and L5-S1 were not severe because (a) the medical evidence does not support the extent of back pain alleged by Plaintiff, and (b) although Plaintiff's physician recorded some lumbosacral abnormalities, follow-up examinations showed normal findings. (*Id.* at 9-10.) Based upon this evidence, Defendant argues that the ALJ correctly concluded that Plaintiff's back issues did not satisfy the twelve month durational requirement. (*Id.* at 10.) Furthermore, Defendant argues that Plaintiff is incorrect that the ALJ applied the wrong legal standard regarding the twelve month requirement because, in observing that Plaintiff's back pain wax and waned, the ALJ stated that her impairment was intermittent and therefore would not be expected to continually last for twelve months. (*Id.*) Finally, Defendant argues that the ALJ was correct in finding that Plaintiff's testimony regarding the alleged severity of her symptoms were not entirely credible because (a) it was not consistent with the record medical evidence and, (b) her conservative treatment only included basic medication without a referral to a specialist. (*Id.*)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence

standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### C. Standard to Determine Severity at Step Two

The claimant bears the burden of presenting evidence establishing severity at Step Two of the disability analysis. *Briggs v. Astrue*, 09-CV-1422, 2011 WL 2669476, at *3 (N.D.N.Y. Mar.

4, 2011) (Bianchini, M.J.) (Report-Recommendation), *adopted*, 2011 WL 2669463 (N.D.N.Y. July 7, 2011) (Scullin, J.). A severe impairment is one that significantly limits the plaintiff's physical and/or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see also* 20 C.F.R. § 404.1521(a) (noting that an impairment is not severe at Step Two if it does not significantly limit a claimant's ability to do basic work activities).

The Regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include the following: (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404. 1521(b). "Severity" is determined by the limitations imposed by an impairment, and not merely by its diagnosis. The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe. *Hamilton v. Astrue*, 12-CV-6291, 2013 WL 5474210, at *10 (W.D.N.Y. Sept. 30, 2013); *accord*, *Baker v. Comm'r of Soc. Sec.*, 15-CV-0787, 2016 WL 1446117, at *3 (N.D.N.Y. Mar. 22, 2016) (Suddaby, J.).

An ALJ should make a finding of "'not severe' . . . if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting Social Security Ruling 85-28, 1985 WL 56856, at *3 [1985]). Although an impairment may not be severe by itself, the ALJ must also consider "the possibility of several such impairments combining to produce a severe impairment. . . ." SSR 85-28, 1985 WL 56856,

at *3. However, a combination of "slight abnormalities," having no more a minimal effect on plaintiff's ability to work will not be considered severe. *Id.* The ALJ must assess the impact of the combination of impairments, rather than assessing the contribution of each impairment to the restriction of activity separately, as if each impairment existed alone. *Id.*

The Second Circuit has held that the Step Two analysis "may do no more than screen out de minimis claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *accord*, *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014). If the disability claim rises above a de minimis level, then the ALJ must undertake the remaining analysis of the claim at Step Three through Step Five. *Dixon*, 54 F.3d at 1030.

## IV. ANALYSIS

After carefully considering the matter, the Court finds that the ALJ's decision is supported by substantial evidence with respect to all of Plaintiff's impairments for the reasons stated in Defendant's memorandum of law. (Dkt. No. 22, at 4-10 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

### A. Respiratory Impairments

The ALJ properly found that "the evidence of record including emergency department records, the consultative examination report, and treating source notes" does not support Plaintiff's claim that she has an impairment, or combination of impairments, that significantly limit her ability to perform work activities. (Tr. 18.) Specifically, with respect to Plaintiff's asthma and emphysema, the ALJ noted that the pulmonary examination findings were consistently normal and indicated no chest pain, dyspnea, wheezing, rhonchi, rales or crackles. (Tr. 16.) Similarly, these examinations revealed normal respiratory excursion, breath sound and

voice, and the bilateral lungs were consistently clear to auscultation. (*Id.*) Furthermore, Plaintiff rarely reported coughing and her COPD was described as mild. (*Id.*) The medical records also indicated that these conditions are controlled by medication and do not cause any limitations in work related functioning. (*Id.*) *See Lake v. Colvin*, 14-CV-1394, 2016 WL 2757750, at *5 (N.D.N.Y. May 12, 2016) (Hurd, J.) ("Where, as here, the evidence indicates a condition is well-controlled by medication and does not cause the claimant any functional issues, that condition is ordinarily not 'severe' within the meaning of the Regulations.") (citing cases).

Finally, the ALJ noted that Dr. Tabb opined that Plaintiff should avoid respiratory irritants but did not assess any physical limitations. (Tr. 18.) The ALJ properly gave this opinion only "some weight" due to the fact that Plaintiff's treating sources consistently reported good control of her symptoms with medication and normal pulmonary findings. (*Id.*) The ALJ also noted his concern that Plaintiff continues to smoke cigarettes while alleging disability based, in part, on respiratory impairments. (*Id.*) *See Westfall v. Colvin*, 137 F. Supp. 3d 340, 346 (W.D.N.Y. 2015) (upholding credibility determination where Plaintiff consistently failed to follow physicians' recommended treatments, including quitting smoking).

### B. Degenerative Joint Disease of the Bilateral Hips

With respect to Plaintiff's degenerative joint disease of the bilateral hips, the ALJ found that there was little evidence to support her claim that the disease impaired her functioning. (Tr. 17.) In making this determination, the ALJ noted that (a) imaging studies revealed only some early degenerative changes in Plaintiff's hips, (b) musculoskeletal examinations have been consistently normal, (c) Plaintiff reported some hip pain on only a few occasions since her alleged onset date, and (d) Plaintiff's treatment consisted of only occasional medications,

including over-the-counter medications, and was not referred to any physical therapy or an orthopedic specialist. (*Id.*) The ALJ further noted that Dr. Tabb's physical examination of Plaintiff was essentially normal with only a mild subjective decrease in flexion of the hip. (*Id.*) Specifically, Dr. Tabb noted that Plaintiff had "full [range of motion] of hips except flexion of hip was limited to 90 degrees bilaterally due to pain in hip." (Tr. 279.) Accordingly, Dr. Tabb's examination was not entirely at odds with the ALJ's conclusion that this impairment was not severe and the ALJ properly weighed this evidence against the other medical evidence of record. Indeed, the ALJ stated that "no treating source has noted any limitations in functioning" and Plaintiff has not pointed to any evidence in this regard.[1] (Tr. 18.)

### C. Degenerative Disc Disease at L3-4 with Retrolisthesis and Disc Bulges at L3-4, L4-5, and L5-S1

With respect to Plaintiff's degenerative disc disease and disc bulges, the ALJ found that these impairments were not severe and did not meet the twelve month durational requirement for the following four reasons: (1) although Plaintiff treated for back pain in November 2012 that

---

[1] Granted, Plaintiff cites to Tr. 251, 254, 256, 262, 275, and 338 in support of her argument that her hip impairment is more than a slight abnormality, has more than a minimal impact on her ability to work, and significantly limits her ability to do basic work activities. (Dkt. No. 16, at 6 [Pl.'s Mem. of Law].) However, the Court has reviewed these record citations and is unpersuaded that they support Plaintiff's argument. Specifically, most of these citations contain doctor's notes recommending only a change of medication to treat Plaintiff's degenerative joint disease and do not mention any functional limitations. (Tr. 251, 254, 256, 262.) Indeed, one of the cited opinions states that Plaintiff is responding well to naproxen and another opinion describes the joint disease as mild, while other opinions prescribe over-the-counter medications such as Tylenol. (Tr. 254, 257, 338.) The severity of an impairment is determined by the limitations imposed by the impairment, and not merely by diagnosis of the impairment. *Ellis v. Comm'r*, 11-CV-1205, 2012 WL 5464632, at *4 (N.D.N.Y. Sept. 7, 2012) (Baxter, M.J.) (citing *Coleman v. Shalala*, 895 F. Supp 50, 53 [S.D.N.Y. 1995]); *see also McConnell v. Astrue*, 03-CV-0521, 2008 WL 833968 (N.D.N.Y. Mar. 27, 2008) (McAvoy, J.). Accordingly, Plaintiff has failed to meet her burden in this regard.

revealed mild findings on examination, by a follow-up appointment in February 2013, Plaintiff's musculoskeletal examination was normal; (2) progress notes failed to make any mention of back pain or related symptoms, including in the list of complaints from Plaintiff, and there was no indication of any sort of back pain for several months; (3) the only treatment Plaintiff received was being prescribed Flexeril and over-the-counter medications such as ibuprofen; and (4) Plaintiff was not referred to a spine specialist nor was she sent for physical therapy. (Tr. 17.) Based upon these findings, the ALJ held that Plaintiff's symptoms have waxed and waned and have not lasted for twelve consecutive months at any given time (nor have they been expected to do so). (Tr. 15, 17.)

After reviewing the medical evidence of record, the Court agrees with Plaintiff that the ALJ failed to consider treatment notes from May and June 2013, which indicate that Plaintiff complained of back pain and was prescribed Lortab. (Tr. 329, 333-35.) However, the Court finds these errors to be harmless because the ALJ's ultimate conclusion that Plaintiff's symptoms waxed and waned and were not expected to significantly limit her ability to perform basic work related activities for twelve consecutive months is supported by substantial evidence. Specifically, the ALJ correctly noted that, although Plaintiff treated for back pain in November 2012, her musculoskeletal examination was normal during a follow-up appointment in February 2013. (Tr. 324.) The ALJ also noted that, during this appointment in February 2013, Plaintiff self-reported being non-compliant with her medications. (Tr. 320, 18.)

Finally, progress notes from an appointment during the following month in March 2013 made no mention of back pain or related issues. (Tr. 326-28.) While Plaintiff is correct that treatment notes from May 2013 reflect that she had once again complained of back pain, her

musculoskeletal examination during that appointment was normal. (Tr. 329, 331.) Accordingly, the medical record evidence demonstrates a gap of several months where Plaintiff did not complain of symptoms related to her back and, when she did (in February and May 2013), her musculoskeletal examination was normal. Although Plaintiff was eventually prescribed Lortab in June 2013, there is no indication from the treatment notes that she was suffering functional limitations that could reasonably be expected to limit her ability to perform basic work activities. Furthermore, this does little, if anything, to explain the several months where Plaintiff was essentially asymptomatic. For all of these reasons, the Court finds that substantial evidence supported the ALJ's determination.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 16) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 22) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: July 20, 2016
       Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge